# In the United States Court of Federal Claims

### No. 17-206C
### Filed: November 19, 2019

* * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| **STATE OF CALIFORNIA,**<br>**acting by and through**<br>**BETTY T. YEE, STATE CONTROLLER,**<br><br>            **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>            **Defendant.** | **Motion to Amend Pleadings after Mandate Issued.** |

* * * * * * * * * * * * * * * * * *

**Martin Lobel**, Lobel Novins & Lamont, LLP, Washington, D.C. for plaintiff.

**Zachary J. Sullivan**, Attorney of Record, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Allison Kidd-Miller**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, and **Joseph H. Hunt**, Assistant Attorney General. Of counsel was **Amy M. Siadak**, Attorney-Advisor, General Law, Office of the Solicitor – Rocky Mountain Region, United States Department of the Interior.

# O R D E R

## HORN, J.

Plaintiff, Betty T. Yee, acting through and for the State of California, has alleged a breach of contract by defendant United States. Plaintiff originally filed its complaint in the United States District Court for the District of Columbia on March 14, 2016. On plaintiff's motion, the District Court for the District of Columbia transferred plaintiff's case to the United States Court of Federal Claims on February 13, 2017 and plaintiff filed a transfer complaint in this court on March 2, 2017. Plaintiff alleged that the defendant, through the United States Department of the Interior (DOI),[1] improperly withheld payment in the

---

[1] Plaintiff's transfer complaint named the Secretary of the Department of the Interior as the defendant. The court notes, according to the Rule 10(a) (2019) of the United States Court of Federal Claims (RCFC), only the United States may be named as a defendant. See RCFC 10(a). This Order's caption is reflective of the caption used in this court's trial court Opinion and in the parties' filings involving plaintiff's current motion to amend its pleadings. The caption of this case on appeal to the United State Court of Appeals for the

amount of "$296,459.94," plus interest, for "FY 2011 to FY 2014." Plaintiff alleged that the DOI adopted and imposed a different method of accounting for allowable costs rather than calculating them under California's State Administrative Manual (SAM) method as allowed pursuant to a cooperative agreement contract for oil and gas lease royalty audit services. The parties cross-moved for summary judgment. This court denied plaintiff's motion for summary judgment and granted defendant's cross-motion for summary judgment on December 20, 2017. Judgment was entered on December 21, 2017. See Yee v. United States, 135 Fed. Cl. 718 (2017), rev'd, 777 F. App'x 484 (Fed. Cir. 2019). Plaintiff timely appealed the decision to the United States Court of Appeals for the Federal Circuit on February 9, 2018. On June 12, 2019, in an unpublished and non-precedential opinion, the Federal Circuit reversed the ruling on summary judgment with respect to interpretation of the words of the cooperative agreement and issued the mandate on August 16, 2019.

On September 16, 2019, plaintiff filed a "Motion to Amend the Prayer for Relief" in this court. In that motion, plaintiff moves to amend its previously filed transfer complaint in this court to change the monetary amount claimed in its transfer complaint from $296,459.94 for fiscal years 2011 to 2014 to $339,861.88 to include allegedly withheld payments for a new fiscal year, fiscal year 2015. Plaintiff not only filed its motion to amend the pleadings after this court had issued its Opinion and judgment, but also after completion of the appeal process in which the United States Court of Appeals for the Federal Circuit issued its decision on June 12, 2019 and after the Federal Circuit issued its mandate on August 16, 2019. Plaintiff, therefore, is asking this court to award monies plaintiff alleges were due for fiscal year 2015, a year which was not included in plaintiff's original complaint filed in the United States District Court for the District of Columbia, in its transfer complaint filed in this court, or within the scope of what was raised on appeal to the United States Court of Appeals for the Federal Circuit.

In the unpublished and non-precedential opinion, the Federal Circuit stated there was a single issue on appeal of contract interpretation regarding how costs would be calculated to reimburse plaintiff for performing audit services for the DOI. See Yee v. United States, 777 F. App'x 484, 486 (Fed. Cir. 2019). The Federal Circuit agreed with plaintiff that the agreement between the California State Controller's Office and the United States Department of the Interior allowed for costs to be calculated according to California's SAM method as opposed to defendant's calculation under the United States Office of Management and Budget (OMB) method. See id. at 487. The Federal Circuit explained that the SAM method allows reimbursement for costs related to accrued fringe benefits in addition to actual cash payments for reimbursement, whereas the OMB method only allows reimbursement for actual cash payments. See id. The Federal Circuit reasoned that the plain language of the contract does not prohibit the use of the SAM method or prohibit reimbursements on costs outside of actual cash payments. See id. at 486. The Federal Circuit stated that since the contract explicitly allowed the use of the SAM method the reimbursements should not be confined to only actual cash payments. See id. at 487-88. The Federal Circuit further stated that, although OMB calculations are

Federal Circuit titled plaintiff as "BETTY T. YEE, CALIFORNIA STATE CONTROLLER." (capitalizations in original).

allowed under the contract, the reference to OMB practice is superseded by the specific allowance of the SAM method when the agreement between the parties states: "Fringe benefits *shall be allowed* in accordance with *the State's established accounting system*." Id. at 485 (emphasis in original). Additionally, the Federal Circuit reasoned incurred costs under the contract does not limit the costs to actual cash payments as the contract states plaintiff would be reimbursed for "costs incurred *under this Agreement*," which includes the accrued costs from fringe benefits calculated under the SAM method. Id. at 488 (emphasis in original). Finally, the Federal Circuit stated that even if the contract is ambiguous and utilization of the SAM method could potentially lead to overcompensation for plaintiff, such an ambiguity should be construed in favor of plaintiff. See id. at 488-89. Consequently, the Federal Circuit found that the SAM method was an allowable form of cost calculation under the contract and plaintiff was entitled to the monetary amount claimed. The Federal Circuit concluded: "In sum, Interior and the State of California contracted for use of state employee labor. In exchange for use of that labor, Interior agreed to reimburse the State for allowable costs. The contract allowed certain costs to be calculated and billed using the State's practice. The State did so." Id. at 489. The Federal Circuit decision concluded: "For the foregoing reasons, we reverse the Court of Federal Claims's decision."

The Federal Circuit subsequently issued its mandate on August 16, 2019. The mandate states:

> In accordance with the judgment of this Court, entered June 12, 2019, and pursuant to Rule 41 of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

> Costs are awarded to appellant Betty T. Yee in the amount of $909.28 and taxed against appellee United States.

On September 5, 2019, the parties filed a status report in which plaintiff asserted to the court for the first time that is entitled to $339,861.88, rather than the $296,459.94 claimed in the transfer complaint. According to plaintiff's calculation,

> [t]he $296,459.94 cited by the defendant is what the defendant claimed to have been overcharged, but after the defendant took all the money it claimed it was entitled to, plaintiff discovered that the defendant had in fact taken $339,861.88. As shown on the attached June 20, 2019 email to the defendant, the defendant adjusted its payments to its own methodology in 2015 in addition to recovering for the "over billed" amount.

At a September 11, 2019 status conference after the parties had filed their joint status report, plaintiff requested the court to allow plaintiff to amend its pleadings to change the amount claimed from $296,459.94 to $339,861.88 so as to include a claim for fiscal year 2015. Subsequently, on September 16, 2019, plaintiff filed its motion to amend its pleadings. Plaintiff argues that as soon as it learned that the $296,459.94 value "was

erroneous, it promptly notified the defendant United States on June 20, 2019."[2] Plaintiff alleges:

> Since that time, the defendant has not disputed the amount. Indeed, since defendant audited the plaintiff every year after it started recouping the money, it probably knew or should have known of the amount it took, but never informed plaintiff or corrected it.

Plaintiff cites RCFC 15 (2019) to request to amend the transfer complaint's monetary claim to include monies plaintiff alleges are due for fiscal year 2015. Plaintiff does not elaborate on how the cited RCFC 15 would be applied in the above-captioned case. Plaintiff also cites to Rule 41 of the Federal Rules of Appellate Procedure (2019), arguing: "When the Court of Appeals issued its Mandate on August 16, 2019, it effectively transferred jurisdiction back to this Court which now is required to act as if it granted plaintiff's Motion for Summary Judgment and order the relief sought." Plaintiff asserts that this court now, once again, possesses jurisdiction and should grant its motion to amend the pleadings to reflect the new monetary value claimed.

On September 30, 2019, defendant filed a response opposing plaintiff's motion to amend the pleadings and offers three reasons: undue delay, unfair prejudice, and futility. First, defendant argues plaintiff's change in amount is unduly delayed because the case was initially filed in the United States District Court for the District of Columbia in 2016:

> The time to add additional claims to this litigation has long passed, now that the case is over. While the agency [DOI] did make reductions to California's invoices for fiscal year 2015, the agency did not have the opportunity to review California's claim for fiscal year 2015, because California is just now raising it, after the proceedings in the Court of Federal Claims and Federal Circuit concluded. The audit report at issue in this litigation did not even cover fiscal year 2015; it covered fiscal years 2011-2014.

Defendant argues plaintiff's assertion that "it did not have the information necessary to amend its complaint until after the Federal Circuit's decision . . . relies on nothing beyond its counsel's say-so in its motion." Defendant asserts "the emails that California attached to the Joint Status Report do not indicate that California learned in June 2019 that the $296,459.94 in the prayer for relief was an 'erroneous' number." Instead, defendant argues that "the emails indicate that California decided that it would now seek to recover an additional amount for fiscal year 2015."

Next, defendant argues that for this court now to act on plaintiff's newly claimed fiscal year 2015 value asserted by plaintiff would be unfairly prejudicial as plaintiff is attempting to hold defendant liable for an amount that was not presented to the agency,

---

[2] The court notes that in its reply brief, plaintiff clarified that plaintiff's counsel "notified defendant's counsel, the only route the issue could have been raised with the defendant because the matter was in litigation."

litigated in this court, or litigated on appeal at the Federal Circuit.[3] Defendant further contends that since plaintiff did not previously raise the issue of an additional amount for fiscal year 2015, plaintiff has waived the issue when plaintiff "expressly requested $296,459.94 at the Federal Circuit." Defendant argues that under the "mandate rule," plaintiff waived any claims for the fiscal year 2015 because "'[a]n issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived.'" (quoting Amado v. Microsoft Corp., 517 F.3d 1353, 1360 (Fed. Cir. 2008)).

Moreover, defendant argues plaintiff's motion to amend is futile as the DOI has yet to consider the new request for fiscal year 2015 or take any final agency action:[4]

The cooperative agreement [litigated] requires that issues be raised with the Agreements officer and then raised to the branch chief if there is a dispute. There has been no final agency action with respect to this additional amount. Indeed, California has not proposed an amendment that would allege that it has exhausted its administrative remedies.

The cooperative agreement at issue in this case, in place for fiscal year 2015, California Cooperative Agreement No. D12AC70004, states in Section 7.5 for Resolving Disputes:

ONRR [Office of Natural Resources Revenue] commits itself to working with the State [of California] in a harmonious manner to achieve the objectives of the project successfully. Disagreements between ONRR and the State over the interpretation of provisions or terms in this Agreement shall be resolved according to the procedures below.

A.      ONRR shall attempt first to resolve disagreements with the State through informal discussion between the CO [Contracting Officer], COR [Contracting Officer's Representative], and the State's PI [Principal Investigator].

B.      If the disagreement is not resolved informally, the CO, COR, and the PI shall document the nature of the disagreement and bring it to the attention of the Chief, Procurement Branch, ONRR, Western Administrative Service Center, Lakewood, Colorado. The final agency action for DOI will be made by the Chief, Procurement Branch.

---

[3] The issue of fiscal year 2015 also was not raised at the United States District Court for the District of Columbia.

[4] Plaintiff did not indicate in its motion to amend or in its reply brief whether, or if so, when it had properly submitted fiscal year 2015 for consideration to the appropriate Agreements Officer at the DOI. As indicated above, it appears that plaintiff has only notified defendant's counsel at the Department of Justice, and not any official at the DOI, because, as plaintiff stated, notifying defendant's counsel of record was "the only route the issue could have been raised with the defendant because the matter was in litigation."

Plaintiff replied to defendant on October 2, 2019 and attached the DOI's audit reports for fiscal years 2015, 2016, and 2017. Plaintiff's attachments accompanying its reply did not contain evidence that plaintiff had met the requirements quoted above in the cooperative agreement to make a claim to the agency first regarding possible monies due for fiscal year 2015. Plaintiff, also, did not make any additional arguments in its reply beyond re-iterating the arguments made in its motion to amend its pleading.

### D I S C U S S I O N

Rule 41 of the Federal Rules of Appellate Procedure states that the mandate of an appellate court "consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs." Fed. R. App. P. 41. An appellate court's mandate may include various instructions for the trial court including on remand identifying the issues to be addressed. As quoted above, the Federal Circuit's August 16, 2019 mandate stated, without further elaboration:

> In accordance with the judgment of this Court, entered June 12, 2019, and pursuant to Rule 41 of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

> Costs are awarded to appellant Betty T. Yee in the amount of $909.28 and taxed against appellee United States.

The Federal Circuit explained in Exxon Chemical Patents, Inc. v. Lubrizol Corp.:

> As an initial matter, every appellate court judgment vests jurisdiction in the district court to carry out some further proceedings. In some cases, those further proceedings may be purely ministerial, as when a judgment for the plaintiff is reversed and the only matters that remain for the district court are to dismiss the complaint and enter the judgment in the docket. Frequently, however, the disposition of a case in the court of appeals will require the district court to undertake more significant proceedings. In either case, the nature of the district court's remaining tasks is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion.

Exxon Chem. Patents, Inc. v. Lubrizol Corp., 137 F.3d 1475, 1483 (Fed. Cir. 1998) (citations omitted); see also Tronzo v. Biomet, Inc., 318 F.3d 1378, 1380 (Fed. Cir. 2003) (citing Exxon Chem. Patents, Inc. v. Lubrizol Corp., 137 F.3d at 1483).

A trial court generally has discretion to complete trial proceedings and enter judgment upon remand within the bounds of the appellate court's mandate. See State Indus., Inc. v. Mor-Flo Indus., Inc., 948 F.2d 1573, 1577 (Fed. Cir. 1991) ("Absent contrary instructions, a remand for reconsideration leaves the precise manner of reconsideration – whether on the existing record or with additional testimony or other evidence – to the sound discretion of the trial court." (citing Adelson v. United States, 782 F.2d 1010, 1012 (Fed. Cir. 1986))). When an appellate court issues a mandate of reversal without a remand, as was true regarding the Yee case currently under review, the trial court has the authority to enter judgment consistent with the appellate court's opinion. The trial court, however, "may not deviate from the mandate of an appellate court." Matter of

Beverly Hills Bancorp, 752 F.2d 1334, 1337 (9th Cir. 1984). All appealed issues decided by an appealed court are precluded from further adjudication by the trial court. See, e.g., Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 1382-83 (Fed. Cir. 1999) (holding earlier appellate decision disposed of all appealed issues relating to reimbursement of royalties without remand therefore any issues concerning reimbursements are foreclosed from trial court consideration).

The mandate issued by the Federal Circuit in the Yee case reversed this court's judgment on an issue of contract interpretation of the cooperative agreement following this court's Opinion based on the transfer complaint filed in this court. The Federal Circuit's unpublished decision reversed this court's conceptual analysis of how to calculate the monies due to the State of California under the terms of the existing cooperative agreement between the parties, stating "the Court of Federal Claims erred in concluding the State's use of the SAM formula to calculate was improper under the Agreement." Yee v. United States, 777 F. App'x at 486. The Federal Circuit concluded:

> In sum, Interior and the State of California contracted for use of state employee labor. In exchange for use of that labor, Interior agreed to reimburse the State for allowable costs. The contract allowed certain costs to be calculated and billed using the State's practice. The State did so.

Id. at 489.

In the case litigated in this court and appealed to, and adjudicated by, the Federal Circuit, plaintiff sought reimbursement for withheld funds covering only fiscal years 2011 through 2014, although the contract between the State of California's State Controller's Office and the DOI was in effect from October 1, 2010 through June 30, 2016. Plaintiff's current motion to amend now seeks payment for an additional year, fiscal year 2015. Plaintiff, however, did not present a claim for fiscal year 2015 to the United States District Court for the District of Columbia when the original complaint was filed on March 14, 2016 in that court, when the transfer complaint was filed in this court on March 2, 2017, or to the Federal Circuit while the case was pending on appeal before the mandate was issued.

Plaintiff now tries to argue that even after the Federal Circuit's mandate was issued, this court should allow plaintiff to amend the pleadings to add monies to the judgment not claimed in the transfer complaint, but allegedly due for fiscal year 2015, a year not under review in any of these courts.[5] Moreover, no issues concerning contract performance or computation regarding fiscal year 2015 were included in plaintiff's transfer complaint or litigated in this court or at the United States Court of Appeals for the Federal Circuit. Even plaintiff's corrected brief on appeal at the Federal Circuit did not mention fiscal year 2015. Plaintiff's corrected appellate brief claimed the same amount that was claimed in the transfer complaint filed in this court of "$296,459.94" for fiscal years 2011 to 2014. In plaintiff's reply brief on appeal, plaintiff did not name fiscal year 2015 as an issue and continued to claim "$296,459.94 for four years of claimed overcharges." Although the allowable contract interpretation method to be utilized was conclusively

---

[5] The court notes that under plaintiff's approach, plaintiff could attempt to come back to this court in the future to amend its pleadings to seek an adjusted judgment for fiscal year 2016.

addressed by the Federal Circuit, the circumstances of performance and the specific amounts claimed for fiscal year 2015 were not within the scope of the review conducted by this court or by the Federal Circuit, and, therefore, are not within the mandate issued by the Federal Circuit. It is unusual timing for plaintiff to seek to amend its pleadings to include fiscal year 2015. Moreover, this court noted in its trial level Opinion that in order to proceed with summary judgment during the litigation of the above-captioned case on the legal issues regarding contract interpretation, "both parties agree[d] that there [we]re no material facts in dispute for the purposes of the issues addressed in the parties' motions for summary judgment." Yee v. United States, 135 Fed. Cl. at 730.

Plaintiff, nonetheless, argues that it is appropriate to include fiscal year 2015 as it was "the amount the defendant actually took from the plaintiff" and "it should have been part of this proceeding because it was taken as part of the defendant's misreading of the contract." Plaintiff alleges that "[t]here is no dispute that the defendant took $339,861.88 from the plaintiff as part of its attempt to recover money it claimed was owed due to it's [sic] erroneous interpretation of it's [sic] agreement" which would raise the amount claimed in plaintiff's transfer complaint. Plaintiff additionally claims there is no dispute because:

> As soon as plaintiff learned that number was erroneous, it promptly notified the defendant on June 20, 2019. Since that time, the defendant has not disputed the amount. Indeed, since defendant audited the plaintiff every year after it started recouping the money, it probably knew or should have known of the amount it took, but never informed plaintiff or corrected it.

Defendant, however, does not acknowledge the accuracy of the amount claimed by plaintiff for fiscal year 2015. Defendant states, "[t]he agency was not presented with a claim for fiscal year 2015 and, thus, it has not had the opportunity to issue a decision explaining why the 2015 invoices were reduced and to review the calculations." The fiscal year 2015 claim amount remains in dispute between the parties. Defendant asserts that under the language of the agreement between the parties, the DOI is entitled to review plaintiff's claimed amount for fiscal year 2015, and states:

> The cooperative agreement requires that issues be raised with the Agreements officer and then raised to the branch chief if there is a dispute. There has been no final agency action with respect to this additional amount. Indeed, California has not proposed an amendment that would allege that it has exhausted its administrative remedies.

Under the terms of the cooperative agreement, the State of California should have first pursued its claim for monies allegedly due for fiscal year 2015 with the appropriate officer at the DOI before seeking a monetary claim for fiscal year 2015 in this court.

Moreover, in accordance with RCFC 15(a)(1), "[a] party may only amend a pleading once as a matter of course within: (A) 21 days after service of the pleading; or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under RCFC 12(b), (e), or (f), whichever is earlier." RCFC 15(a)(1); see also Simons v. United States, 75 Fed. Cl. 506, 508 (2007) (citing RCFC 15(a); Mitsui Foods, Inc. v. United States, 867 F.2d 1401,

1403 (Fed. Cir. 1989)). Pursuant to RCFC 15(a)(2), in all other cases beyond amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." RCFC 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the [trial court]." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 330 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."); Tamerlane, Ltd. v. United States, 550 F.3d 1135, 1147 (Fed. Cir. 2008) ("'The decision to grant or deny a motion for leave to amend . . . lies within the sound discretion of the trial court.'" (quoting Insituform Techs., Inc. v. Cat Contracting, Inc., 385 F.3d 1360, 1372 (Fed. Cir. 2004))); Datascope Corp. v. SMEC, Inc., 962 F.2d 1043, 1045 (Fed. Cir. 1992) ("The grant or denial of leave to amend the complaint is within the discretion of the district court, and will be reversed only for an abuse of discretion." (internal citation omitted)).

Generally, "[a] party should move to amend its pleading 'as soon as the necessity for altering the pleading becomes apparent,' i.e., 'at the earliest opportunity.'" Hanover Ins. Co. v. United States, 134 Fed. Cl. 51, 60 (2017) (quoting Alta Wind I Owner-Lessor C v. United States, 125 Fed. Cl. 8, 11 (2016)). Most cases which address reasons to grant or deny motions to amend a pleading concern cases in which, logically, the case is still pending in the trial court. RCFC 15, however, has been "liberally construed, and courts generally grant leave to amend if there is no 'apparent or declared reason' not to permit amendment." Sonoran Tech. & Prof'l Servs., LLC v. United States, 133 Fed. Cl. 401, 403 (2017) (quoting A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1158 (Fed. Cir. 2014)).[6]

The moving party bears the burden of justifying its delay. See Te-Moak Bands of W. Shoshone Indians of Nevada v. United States, 948 F.2d 1258, 1263 (Fed. Cir. 1991); Sonoran Tech. & Prof'l Servs., LLC v. United States, 133 Fed. Cl. at 404 ("The 'party seeking to amend its complaint after significant delays bears the burden of justifying the delay.'" (quoting Cupey Bajo Nursing Home, Inc. v. United States, 36 Fed. Cl. 122, 132 (1996))); see also Veridyne Corp. v. United States, 86 Fed. Cl. 668, 681 (2009) ("[T]he burden to demonstrate prejudice is plaintiff's . . . ."). The United States Court of Appeals for the Federal Circuit has recognized a variety of reasons to deny leave to amend, such as: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Te-Moak Bands of W. Shoshone Indians v. United States, 948 F.2d 1258, 1260 (Fed. Cir. 1991) (quoting Foman v. Davis, 371 U.S. at 182); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. at 330-31 ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice that Zenith [the nonmovant] would have suffered as a result . . . ."); Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1363 (Fed. Cir. 2013) ("[A]mendments are not allowed where they result in undue delay or prejudice."); Christofferson v. United States, 77 Fed. Cl. 361, 363 (2007) ("The existence of any one of these criteria is sufficient to deny a motion to amend, the theory

---

[6] The court notes that both RCFC 15(a)(1) and RCFC 15(a)(2) address "Amendments Before Trial." See RCFC 15(a).

being that the amendment would not be necessary to serve the interests of justice under such circumstances." (quoting <u>Spalding & Son, Inc. v. United States</u>, 22 Cl. Ct. 678, 680 (1991))).

In cases in which proceedings have not concluded in the trial court, "mere delay, without some showing of prejudice, bad faith, or futility [has been found to be] insufficient to deny a motion to amend a complaint." <u>Alaska v. United States</u>, 15 Cl. Ct. 276, 280 (1988) (finding that delay of thirteen months in seeking to amend complaint, by itself, did not constitute undue delay requiring denial of motion for leave to amend); <u>Cooke v. United States</u>, 79 Fed. Cl. 741, 742-42 (2007) (finding that delay of nine months to amend answer and add affirmative defenses not unduly delayed as amendment did not broaden scope of litigation even if discovery is expanded); <u>see</u> <u>also</u> <u>Meyer Grp., Ltd. v. United States</u>, 115 Fed. Cl. 645, 649 (2014) (finding that defendant's delay for seeking leave to amend twelve months after filing its original answer and six months after plaintiff filed an amended complaint, was, by itself, insufficient reason to warrant denial of leave to amend); <u>Katzin v. United States</u>, 115 Fed. Cl. 618, 621 (2014) (finding that there was no undue delay when case was less than two years old and discovery was still underway, although fact discovery had closed within the past few days).

Delay alone was found to have warranted denial of a motion for leave to amend when such delay is "significant." <u>Te-Moak Bands of W. Shoshone Indians of Nevada v. United States</u>, 948 F.2d at 1262 ("[C]ourts have not hesitated to deny motions to amend that have been filed after significant delay."). A significant delay is one that is "measured in years." <u>Meyer Grp., Ltd. v. United States</u>, 115 Fed. Cl. at 649 (quoting <u>Cooke v. United States</u>, 79 Fed. Cl. 741, 742 (2007)); <u>see also</u> <u>Cencast Servs., L.P. v. United States</u>, 729 F.3d at 1363-64 (affirming trial court's holding that the delay was unreasonable when plaintiff failed to raise its newly pleaded theory for over fifteen years after it was aware of the theory and five years after it could have first raised the theory in response to a government counterclaim); <u>Te-Moak Bands of W. Shoshone Indians of Nevada v. United States</u>, 948 F.2d at 1263 (finding that the tribal bands' eight year delay in filing exceptions to the government's supplemental accounting report to amend original accounting petition constituted undue delay); <u>Shell Oil Co. v. United States</u>, 123 Fed. Cl. 707, 727 (2015) (finding that the government's motion for leave to amend its answer to assert an affirmative defense and two counterclaims in 2015 was untimely and prejudicial to the plaintiffs when the government "was on notice" of plaintiffs' related insurance coverage litigation that gave rise to the alleged fraud since 1992), <u>aff'd</u>, 896 F.3d 1299 (Fed. Cir. 2018); <u>Rockwell Automation, Inc. v. United States</u>, 70 Fed. Cl. 114, 124 (2006) ("[T]he government has failed to satisfy its burden of justifying why it took eight years from March 1997 before it sought to add affirmative defenses."). "Merely proving that other cases allowed longer delays . . . does not suffice to demonstrate entitlement to amendment. Delay must be justified." <u>Alfa Laval Separation, Inc. v. United States</u>, 47 Fed. Cl. 305, 314 (2000) (finding that plaintiff who prevailed in bid protest was not entitled to amend complaint to add claim for proposal preparation costs, when there was a two-year delay in seeking amendment, and plaintiff failed to justify the delay).

Also, "[u]ndue prejudice may be found when an amended pleading would cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery." <u>Cooke v. United States</u>, 79 Fed. Cl. at 742-43 (citing <u>Hauschild v.</u>

<u>United States</u>, 53 Fed. Cl. 134 (2002)). "Mere annoyance and inconvenience . . . however, are insufficient bases to warrant a denial of a motion to amend." <u>St. Paul Fire & Marine Ins. Co. v. United States</u>, 31 Fed. Cl. 151, 153 (1994) ("Although, in the case at bar, further minuscule time-invoking discovery may appropriately ensue, due to defendant's introduction of two additional witnesses, the aggregate effect of this extension of discovery, particularly in the absence of a firm trial date or a trial date in the distant future, does not rise to the level of undue prejudice."); <u>see also</u> <u>Alaska v. United States</u>, 15 Cl. Ct. at 280 (finding that the government was not unduly prejudiced by plaintiff's motion for leave to amend its complaint when government failed to explain what other potential hardships it would suffer other than "potentially extensive discovery," which, in light of trial date having not been scheduled, was only a "vexing inconvenience"). Further, "[t]he cost, even to plaintiff as a small business, and burden of undertaking additional discovery do not substantiate the level of prejudice needed to overcome the liberal standard of RCFC 15(a)(2)." <u>Veridyne Corp. v. United States</u>, 86 Fed. Cl. at 681. Although amendments filed late in litigation are not automatically prejudicial, an amended pleading is more likely to cause prejudice "the further a case has progressed before the amendment is filed." <u>King v. United States</u>, 119 Fed. Cl. 51, 55 (2014) (citing <u>Laber v. Harvey</u>, 438 F.3d 404, 427 (4th Cir. 2006)). Given that the Cooperative Agreement between the State of California and DOI provides for a review of plaintiff's claims first by a DOI official, there also is in this case an issue of prejudice to defendant if that provision is ignored.

"When futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments." <u>St. Paul Fire & Marine Ins. Co. v. United States</u>, 31 Fed. Cl. at 155. Instead, "courts simply decide whether a party's proposed amendment is facially meritless and frivolous, <i>i.e.,</i> 'Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint.'" <u>Id.</u> (emphasis in original) (quoting <u>Alaska v. United States</u>, 15 Cl. Ct. at 280). "This court has found that granting leave to amend a pleading would be futile if the amended complaint would fail to state a claim upon which relief can be granted . . . or if the proposed amendment would fail for lack of jurisdiction or is facially meritless and frivolous." <u>Chapman v. United States</u>, 130 Fed. Cl. 216, 219 (2017) (internal quotation omitted); <u>see also</u> <u>Marchena v. United States</u>, 128 Fed. Cl. 326, 330 (2016) ("A proposed amendment is futile if it would not survive a motion to dismiss."); <u>Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States</u>, 71 Fed. Cl. 172, 176 (2006) ("A motion to amend may be deemed futile if a claim added by the amendment would not withstand a motion to dismiss."). As the United States Court of Appeals for the Federal Circuit stated:

> When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion.

<u>Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.</u>, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006); <u>see also</u> <u>Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.</u>, 200 F.3d 795, 802 (Fed. Cir. 1999) (stating that "speculation" about the ultimate disposition of a

counterclaim is not an appropriate basis for denying a motion for leave to file an amended counterclaim).

In the case currently before this court, only after the Federal Circuit had issued its mandate on August 16, 2019 did plaintiff raise amending its pleading in this court to include fiscal year 2015, first in a joint status report filed on September 5, 2019, followed by discussion at a September 11, 2019 status conference with the parties and this court, and then in a September 16, 2019 motion to amend its pleadings. Plaintiff's motion to amend was filed after both the trial court's and appellate court's proceedings had concluded. Moreover, before raising the issue of amending the pleadings with the court, plaintiff failed to first file its claim with the DOI in accordance with the Cooperative Agreement, and has offered no explanation as to why, except to argue that it only raised the issue with defendant's counsel of record because of the ongoing litigation.

As indicated above, delay by itself does not automatically lead to the denial of a motion to amend. Plaintiff alleges that it only re-calculated the amount owed and discovered the error around June 20, 2019 following the Federal Circuit's decision. Plaintiff, however, has not offered any justification for why monies allegedly due for fiscal year 2015 were not identified by the plaintiff during the approximately three years following the start of this litigation and not first submitted to the DOI, or to this court until September 2019 after the appellate mandate was issued. The above-captioned case was transferred from the United States District Court for the District of Columbia to this court on February 13, 2017. Thereafter, plaintiff filed its transfer complaint in this court on March 2, 2017. Both these filings occurred well after the conclusion of fiscal year 2015. Not only has plaintiff not adequately justified the delay in claiming for fiscal year 2015, but as defendant and counsel for the DOI stated during the September 11, 2019 status conference, the relevant Agreements Officer had not yet been contacted by plaintiff concerning any amounts allegedly due for the fiscal year 2015 which plaintiff is now attempting to claim. As discussed above, the complaint in Case No. 17-206C only sought monetary compensation for fiscal years 2011-2014 and did not include a claim for fiscal year 2015 for this court's or for the Federal Circuit's consideration. The Opinion rendered by this court, the opinion of the Federal Circuit, and the mandate issued by the Federal Circuit did not cover any claim for fiscal year 2015.

This court, therefore, concludes that it would be inappropriate to grant plaintiff's motion to amend its pleading for the above-captioned, previously resolved case in which fiscal year 2015 was not included in plaintiff's original, or transfer, complaint, reviewed by this court, or included in the Federal Circuit's decision and mandate. The State of California has the ability to pursue its claim for fiscal year 2015 reimbursements, but should do so first with the DOI in accordance with the Cooperative Agreement. If plaintiff is not satisfied with the DOI's resolution of its fiscal year 2015claim, plaintiff may file a new complaint with this court regarding a claim for fiscal year 2015, assuming that any applicable statute of limitations has not passed.

**CONCLUSION**

For the reasons discussed above, plaintiff's motion to amend its pleading and prayer for relief is **DENIED**. If, after the DOI has concluded its review of the fiscal year 2015 claim, plaintiff opts to file a new complaint in this court regarding fiscal year 2015, the Clerk of the Court shall assign the case to the undersigned judge. A status conference to hear arguments on the remaining issue of how to calculate interest on the judgment of $296,459.94, will be established separately.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**