# In the United States Court of Federal Claims

### No. 17-206C
### Filed: May 31, 2020

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| **STATE OF CALIFORNIA,** **acting by and through** **BETTY T. YEE, STATE** **CONTROLLER,** | \* \* \* \* |
| **Plaintiff,** | \* \* |
| **v.** | \* \* |
| **UNITED STATES,** | \* \* |
| **Defendant.** | \* \* \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Motion for Pre- and Post-Judgment Interest; Contract Disputes Act; Prompt Payment Act.**

**Martin Lobel**, Lobel, Novins & Lamont, LLP, Washington, D.C. for plaintiff.

**Rafique Anderson**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Zachary J. Sullivan,** Trial Attorney, Commercial Litigation Branch, Civil Division, **Allison Kidd-Miller**, Assistant Director, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division. Of counsel was **Amy M. Siadak**, Attorney-Advisor, General Law, Office of the Solicitor – Rocky Mountain Region, United States Department of the Interior.

## O P I N I O N

<u>**HORN, J.**</u>

### FINDINGS OF FACT

In the above-captioned case, after this court issued a decision, and after the United States Court of Appeals for the Federal Circuit issued a decision and mandate, and the case was remanded to this court, plaintiff filed for consideration of additional issues in this court.[1] Plaintiff's amended complaint in this court initially sought redress in the amount of

---

[1] This Opinion incorporates the previous Orders and Opinions issued in the above captioned case.

$296,459.94, plus interest.[2] Plaintiff disputed defendant's interpretation of cooperative the agreement language pertaining to reimbursement calculation methods between the State of California and the United States for fiscal years 2011-2014. Plaintiff argued that language in the cooperative agreement permitted the state to choose between using its state method for calculating reimbursement and the United States Office of Management and Budget (OMB) reimbursement method. Plaintiff elected to use its state calculation method to calculate salary, fringe benefits, and indirect costs. Defendant argued that the language of the cooperative agreement required plaintiff to follow the OMB method for calculating reimbursement amounts. According to defendant, this interpretation resulted in the defendant finding that it had over-compensated plaintiff by $296,459.94, which defendant concluded was due to plaintiff's choice to use its reimbursement method, thereby calculating costs differently from the OMB method. Defendant subsequently proceeded to withhold payment to make up for the $296,459.94 difference.

Plaintiff initially filed suit in the United States District Court for the District of Columbia, which transferred the case to the United States Court of Federal Claims. In this court, plaintiff argued that using the state's reimbursement method was permissible under the language in the contract, and that plaintiff was entitled to the $296,459.94 for the years 2011 to and including 2014, along with interest. Defendant argued that the contract language required that plaintiff should have used OMB's method for calculating cost reimbursement. On December 20, 2017, this court granted defendant's motion for summary judgment, denied plaintiff's cross-motion for summary judgment, and dismissed plaintiff's complaint.[3] See generally Yee v. United States, 135 Fed. Cl. 718 (2017), rev'd, 777 F. App'x 484 (Fed. Cir. 2019). On February 9, 2018, plaintiff appealed this court's decision to the United States Court of Appeals for the Federal Circuit. The Federal Circuit reversed the ruling on June 12, 2019 in a non-precedential, unpublished opinion on the single issue of contract interpretation, finding plaintiff's interpretation of the contract language to be permissible. See generally Yee v. United States, 777 F. App'x 484 (Fed. Cir. 2019). The Federal Circuit issued its mandate on August 16, 2019 and remanded the case to this court.

Following the decision, mandate, and remand by the Federal Circuit, plaintiff and defendant filed a joint status report in this court on September 5, 2019, in which plaintiff raised two issues which had previously not been considered by either this court or the Federal Circuit on appeal. Plaintiff asserted that it was entitled to additional monies, and that plaintiff was entitled to pre-judgment and post-judgment interest. Plaintiff subsequently filed a motion in this court to amend its previously amended complaint on September 16, 2019, to adjust the amount in remedy from $296,459.94 to $339,861.88 by adding alleged damages from the fiscal year 2015, a year not pled in the original complaint, or in the amended complaint, or reviewed by the Federal Circuit, to the damages pled in the amended complaint for the time period covering fiscal years 2011 to

---

[2] Plaintiff's sole reference to interest in the amended complaint was a request for this court to "Order the Department of Interior to pay California $296,459.94, plus interest."

[3] Neither plaintiff's cross-motion for summary judgment, nor the reply brief to the cross-motion for summary judgment mentioned interest.

2

and including 2014. Plaintiff asserted it had only recently become aware of the existence of the 2015 costs allegedly owed to the State of California and asserted that plaintiff had promptly notified defendant in June 2019 of the payments allegedly due for the 2015 contract year. Defendant filed a response in this court on September 30, 2019, opposing plaintiff's motion on the grounds that plaintiff's motion would cause undue delay, unfair prejudice and futility. On November 11, 2019, this court denied plaintiff's motion, concluding that "it would be inappropriate to grant plaintiff's motion to amend its pleading for the above-captioned, previously resolved case in which fiscal year 2015 was not included in plaintiff's original, or transfer, complaint, reviewed by this court, or included in the Federal Circuit's decision and mandate."

On September 16, 2019, plaintiff filed another motion, alleging entitlement to pre-judgment and post-judgment interest. The entirety of plaintiff's argument in its motion for interest states:

> When the Court of Appeals issued its Mandate on August 16, 2019, it effectively transferred jurisdiction back to this Court (Fed. R. App P. 41) which now is required to act as if it granted plaintiff's Motion for Summary Judgment and order the relief sought. Plaintiff is entitled to pre and post-judgment interest under the Contract Disputes Act, 41 U.S.C. § 611, the Prompt Payment Act, 31 U.S.C. § 3901 and 48 C.F.R. § 2.101. *See, Sarang Corp. v. U.S.,* 76 Fed. Cl. 560 (2007); *Bay County Florida v. U.S.,* 117 Fed. Cl. 131 (2014).
>
> There is no question that the plaintiff submitted a "claim" *(Sarang* at 564-5) on July 29, 2015 when it filed a protest to ONRR's [Department of Interior Office of Natural Resources Revenue, State, and Tribal Support] decision to recoup money based on its misreading of the contract. The protest was turned down by the defendant on October 7, 2015. Plaintiff appealed the decision on October 29, 2015 and was denied in a final agency action on January 13, 2016. *Id.* at 564. As the Court of Appeals found, "Interior and the State of California contracted for use of state employee labor. In exchange for use of that labor, Interior agreed to reimburse the State for allowable costs. The contract allowed certain costs to be calculated and billed using the State's practice. The State did so." Although the defendant claims that a cooperative agreement is not a contract, that is not the law of the case or supported by the relevant statutes *(See* 31 U.S.C. § 3902(a), 30 U.S.C. § 1732, 31 U.S.C. § 6305). Whether it's called a cooperative agreement or a contract, the Court of Appeals ruled it was a contract to procure services. ONRR contracted with California to procure the use of its auditors to audit federal oil and gas production within the State and independently audited California's performance under the contract every year.
>
> Plaintiff, the State of California is entitled to interest from the date of its claim, July 29, 2015, until payment of the amount owed is received. 41 U.S.C. § 7109(a) [sic] 41 U.S.C. § 611. The interest rate is set by the Secretary of

the Treasury, 5 C.F.R. § 1315.10, and can be found for the relevant periods on the web at https://fiscal.treasury.gov/prompt-payment/rates.html. This is not a difficult task as is shown by the calculations the Controller's Office did which are attached as Exhibit 1.

Accordingly, plaintiff respectfully requests the Court to issue an Order granting its Motion.

(emphasis in original; footnotes and internal citations omitted).

In response, defendant argues that plaintiff is not entitled to pre- or post-judgment interest, first arguing that plaintiff waived its right to include such a claim in the present proceedings before this court by failing to raise the argument in a timely fashion. According to defendant, "California has waived any argument that the CDA [Contract Disputes Act] applies because California failed to raise it until after this case was over." Defendant also asserts that interest as a remedy is precluded in cases against the United States government, except for (1) in situations mandated by statute or (2) provided for within a contract, which defendant argues does not apply to the above caption case, and argues that the agreement at issue is like other cooperative agreements entered into by the Department of the Interior under the Federal Oil and Gas Royalty Management Act of 1982 and characterizes such cooperative agreements as existing outside the coverage of the Contract Disputes Act and Prompt Payment Act. Defendant also argues that the Federal Circuit repeatedly referred to the agreement as a "cooperative agreement" throughout the decision.[4] Alternatively, defendant asserts that if the Contract Disputes Act is found to cover the agreement, defendant claims that plaintiff nevertheless failed to meet the jurisdictional requirements necessary to bring suit under the Contract Disputes Act. Defendant argues that "even if this agreement was not a cooperative agreement, but instead a procurement contract covered by the CDA (which it is not), this Court would lack jurisdiction because California never met the jurisdictional prerequisites under the CDA to even bring suit in this Court." Regarding the Prompt Payment Act, defendant identifies a number of reasons why plaintiff is not entitled to interest: lack of timeliness, that the Prompt Payment Act only applies to procurement contracts, which defendant alleges is not the type of contract at issue in the above captioned case, that the Prompt Payment Act does not apply to situations involving payment delays arising out of disputes between parties, and that the Prompt Payment Act only provides an interest remedy for up to one year.

Plaintiff filed a reply brief which stated in its entirety:

Defendant's opposition to plaintiff's request for interest boils down to two arguments: 1 – The agreement between the Interior Department and the State of California to provide auditing services was not a "contract for the provision of services," but rather a "cooperative agreement" to which neither the Prompt Payment Act (PPA) or the Contract Dispute [sic] Act (CDA)

---

[4] The Federal Circuit exclusively refers to the agreement as being a "contract," "cooperative agreement," or "agreement" in its decision. See generally Yee v. United States, 777 F. App'x 484.

applied; 2 – California's formal protest and appeal of the Interior Department's decision to recoup the $296,459.94 it had already paid for California for its auditing services somehow was not a "claim" under either the PPA or CDA. Neither of defendant's assertions are supported by the facts or the law.

The Court of Appeals specifically found that

> "Interior and the State of California contracted for use of state employee labor. In exchange for use of that labor, Interior agreed to reimburse the State for allowable costs. The contract allowed certain costs to be calculated and billed using the State's practice. The State did so."

Although the defendant claims that a cooperative agreement is not a contract, that is not the law of the case because the Court of Appeals ruled it was a "contract to procure services," the exact test of the CDA, 41 U.S.C. §602(a)(2). Even the case on which the defendant principally relies, *Marquardt Co. V.* [sic] *U.S.* 95 Fed. Cl. 14 (2010), recognized that "The DCA [sic] applies only to contracts that procure goods and services. See 41 U.S.C. § 602." *Id* [sic] at 19. And "The PPA, like the CDA, applies only to certain contracts '[T]he head of an agency acquiring property or services from a business concern, who does not pay the concern for each complete delivered item or property or service by the required payment date shall pay an interest penalty ....' 31 U.S.C. §3902(a)." *Id* [sic] at 20.

"Beyond the general criteria set forth in the CDA and FAR, the Court of Appeals for the Federal Circuit has held that no particular formula or terminology is required for a claim." *Sarang Corp. V.* [sic] *U.S.,* 76 Fed. Cl. 560, 565 (2007). Such a claim was surely made when California filed a formal protest of the Interior Department's decision to recoup $296,459.94, and California's appeal of defendant's denial of its protest, which resulted in a final agency action. This protest was no normal commercial matter. It was filed on behalf of a duly elected official of the State of California who clearly met the requirements, including certification, for recovering interest under both PPA and CDA. *See, Bay County, Florida v. U.S.,* 117 Fed. Cl. 131 (2014). California is not seeking some windfall. It is merely seeking to be put into the same position it would have been in if the Interior Department had not misread the contract and taken money for services that California had already provided. In short, California is entitled to be made whole.

(emphasis in plaintiff's brief; footnotes and internal citations omitted).[5]

---

[5] After the parties fully briefed the motion for interest, the court held a conference with the parties to discuss the motion on December 4, 2019, and instructed the parties to address

## DISCUSSION

Generally, when a plaintiff fails to raise a claim in a complaint or an amended complaint, that failure constitutes a waiver of that issue in the future litigation and failure to raise it on appeal similarly constitutes waiver. See Casa de Cambio Comdiv. S.A. de C.V. v. United States, 291 F.3d 1356, 1366 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 921 (2003) (holding that a claim not raised in the plaintiff's complaint was waived); see also Corus Staal BV v. United States, 502 F.3d 1370, 1378 n.4 (Fed. Cir. 2007) (holding that argument not raised in plaintiff's opening brief was waived); Kalick v. United States, 561 n.10, aff'd, 541 F. App'x 1000 (Fed. Cir. 2013) (holding that claims raised for the first time in plaintiff's response were waived); S. Comfort Builders, Inc. v. United States, 67 Fed. Cl. 124, 153 (2005).

Plaintiff first briefly raised interest on the claim of $296,549.94 as a possibility in this court in the amended complaint, filed on March 2, 2017, in which there is a single reference to interest in the amended complaint, specifically in the closing prayer for relief, which states:

A. Find and Declare that the Department of Interior breached its 2012 Agreement with California by unilaterally adopting and imposing a different method of accounting for allowable costs rather calculating them under California's SAM method as specifically allowed under the Agreement.
B. Find and Declare that the Department of Interior violated that Agreement by withholding $296,459.94 from payments due California under the terms of that Agreement.
C. Order the Department of Interior to pay California $296,459.94, plus interest.
D. Award Plaintiff California its costs in this action;
E. Award such other relief as the Court deems just, necessary and proper.

(emphasis added). Plaintiff did not elaborate, nor did plaintiff provide a legal basis for entitlement to interest in the amended complaint. Plaintiff used the phrases "pre-judgment interest" and "post-judgment interest" for the first time in plaintiff's portion of the September 5, 2019 joint status report in this court after the Federal Circuit had issued its mandate and remanded the case to this court. In the joint status report, plaintiff stated: "California believes that California is entitled to pre-judgment interest on $339,861.88 based on 41 U.S.C. § 611 and post-judgment interest 28 U.S.C. [sic] 1941."[6] Subsequently, in its September 16, 2019 motion for interest, plaintiff first argued, "[p]laintiff is entitled to pre and post-judgment interest under the Contract Disputes Act, 41 U.S.C. § 611, the Prompt Payment Act, 31 U.S.C. § 3901 and 48 C.F.R. § 2.101."

the cases relied on the parties at the conference. The parties subsequently filed a joint status report on December 11, 2019.

[6] The plaintiff initially cited "28 U.S.C. [sic] 1941" in the September 5, 2019 joint status report. Based on subsequent filings by both parties, it appears the plaintiff may have inadvertently cited to 28 U.S.C. § 1941, instead of 28 U.S.C. § 1961 in the September 5, 2019 joint status report.

Prior to September 5, 2019, plaintiff had not included any theory or argument as to why it was entitled to the interest sought in its March 2, 2017 amended complaint either before this court or before the Federal Circuit.

Assuming plaintiff's single, undefined and unexplained reference to "plus interest" in its amended complaint does not constitute waiver of any interest claims, plaintiff now argues that it is entitled to interest pursuant to the Contract Disputes Act (CDA), the Prompt Payment Act (PPA), and 28 U.S.C. § 1961, all of which waive sovereign immunity for interest on claims that are covered. Even if plaintiff has not waived its entitlement to interest by failing to provide a theory supporting its complaint in a timely fashion, this court has to determine that this court has jurisdiction over interest as claimed by plaintiff. See Zumerling v. Marsh, 783 F.2d 1032, 1034 (Fed. Cir. 1986) (citing United States v. Sherwood, 312 U.S. 584, 591 (1941)) ("[T]he issue of whether interest is allowable against the United States has always been considered a jurisdictional matter."); Marathon Oil Co. v. United States, 374 F.3d 1123, 1134 (Fed. Cir. 2004) ("[T]o the extent that the statutory restrictions on dispersal of funds from the Judgment Fund to pay interest on judgments are jurisdictional, the Oil Companies' claim must fail."). This court only has jurisdiction over interest claims if the government's sovereign immunity against interest claims has been explicitly waived. See id. Sovereign immunity against interest on a claim against the United States is presumed to be absolute, unless a statute explicitly provides for the recovery of interest on such a claim. See 28 U.S.C. § 2516(a) (2018) ("Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof."); see also Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 798 (Fed. Cir. 1993) ("Interest may not be recovered against the government in the absence of an explicit waiver of sovereign immunity for that purpose."); FDL Techs., Inc. v. United States, 967 F.2d 1578, 1581 (Fed. Cir. 1992) ("It is well established that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress.") (quotation omitted); see also DMS Imaging, Inc. v. United States, 123 Fed. Cl. 645, 661 (2015). The award of interest can occur only through waiver expressly provided for by a statute or expressly provided by affirmative agreement of the United States in a contract. See United States v. Thayer-W. Point Hotel Co., 329 U.S. 585, 590 (1947) (finding that interest waiving provisions "must be affirmative, clear-cut, unambiguous"); England v. Contel Advanced Sys., Inc., 384 F.3d 1372, 1380 (Fed. Cir. 2004) (finding no contractual waiver of sovereign immunity on interest where the provision was not affirmative or unambiguous); DMS Imaging, Inc. v. United States, 123 Fed. Cl. at 661 (finding sovereign immunity on interest was waived in cases in which the United States consented to pay interest on any damages arising out of a lease contract).

Sovereign immunity for pre-judgment interest against the United States can be waived by the Contract Disputes Act and the Prompt Payment Act, provided that one of the acts applies. See 28 U.S.C. § 2516(a); 41 U.S.C. § 7109; 31 U.S.C. § 3902; see also Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. 77, 99 (2010). The presumption of sovereign immunity also applies to post-judgment interest. The Federal Circuit explained that:

> "As sovereign, the United States, in the absence of its consent, is immune
> from suit." Library of Congress v. Shaw, 478 U.S. 310, 315, 106 S. Ct. 2957,

92 L. Ed. 2d 250 (1986) (citing <u>United States v. Sherwood</u>, 312 U.S. 584, 61 S. Ct. 767, 85 L. Ed. 1058 (1941)). Guided by "the historical view that interest is an element of damages separate from damages on the substantive claim," <u>id.</u> at 314, 106 S. Ct. 2957, the rule of sovereign immunity not only extends to create governmental immunity from an interest award, it does so in the guise of the "no-interest rule," requiring consent to liability for interest on a damage award to be "affirmatively and separately contemplated by Congress," <u>id.</u> at 315, 106 S. Ct. 2957. Thus, the waiver for sovereign immunity for interest must be distinct from a general waiver of immunity for the cause of action resulting in the damages award against the United States. <u>See</u> <u>id.</u> at 316, 106 S. Ct. 2957 (affirming that "federal statutes cannot be read to permit interest to run on a recovery against the United States unless Congress affirmatively mandates that result"); <u>Alaska Airlines, Inc. v. Johnson</u>, 8 F.3d 791, 798 (Fed. Cir. 1993) ("Interest may not be recovered against the government in the absence of an explicit waiver of sovereign immunity for that purpose."). The no-interest rule applies to claims for post-judgment interest. <u>See, e.g.</u>, <u>United States v. N.Y. Rayon Imp. Co.</u>, 329 U.S. 654, 661, 67 S. Ct. 601, 91 L. Ed. 577 (1947) (noting that the no-interest rule includes claims for interest "arising out of pre-existing judgments").

<u>Marathon Oil Co. v. United States</u>, 374 F.3d at 1126–27; <u>see also</u> <u>Health Republic Ins. Co. v. United States</u>, 129 Fed. Cl. at 779 (finding that the court lacked subject-matter jurisdiction because plaintiff did not, "pursuant to 28 U.S.C. § 1961(c)(3), identif[y] any statute allowing for the payment of interest on judgments of the Court of Federal Claims").

The statute at 28 U.S.C. § 1961 allows for the payment of post-judgment interest on certain judgments against the United States issued by the United States Court of Federal Claims. <u>See id.</u>; <u>see also</u> 28 U.S.C. § 2516(a). Section 1961 of title 28 states that, "[i]nterest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law." 28 U.S.C. § 1961(c)(3). Such post-judgment interest accrues for the period starting from the time of judgment on the valid claim and ending upon final payment. <u>See</u> 28 U.S.C. § 1961(a). The Federal Circuit explicitly found that 28 U.S.C. § 1961, standing alone, is not a money damages-granting statute, meaning it does not waive sovereign immunity on post-judgment interest. <u>See</u> <u>Marathon Oil Co. v. United States</u>, 374 F.3d at 1132 (finding the language of 28 U.S.C. § 1961 was ambiguous but was clearly not intended by Congress to provide a separate waiver of interest against the United States); <u>see also</u> <u>Health Republic Ins. Co. v. United States</u>, 129 Fed. Cl. at 779. Instead, 28 U.S.C. § 1961 stipulates how interest is to be calculated once sovereign immunity has been waived; § 1961 does not provide a waiver of sovereign immunity. <u>See</u> <u>Marathon Oil Co. v. United States</u>, 374 F.3d at 1133. Therefore, 28 U.S.C. § 1961 authorizes the payment of interest only if statutory immunity precluding interest has already been waived by a money damages-granting statute. <u>See</u> <u>Marathon Oil Co. v. United States</u>, 374 F.3d at 1127; <u>see also</u> <u>Health Republic Ins. Co. v. United States</u>, 129 Fed. Cl. at 779.

In the case currently before the court once again, plaintiff identifies the Contract Disputes Act and the Prompt Payment Act as a waiver of sovereign immunity on interest. For post-judgment interest to be waived, the Contract Disputes Act or Prompt Payment Act must have provided a waiver of immunity on interest for the agreement in this case. See 41 U.S.C. § 7109; 41 U.S.C. § 7103 (2018); 31 U.S.C. § 3902; 31 U.S.C. § 3901 (2018). If the Contract Disputes Act or Prompt Payment Act applies, then post-judgment interest under 28 U.S.C. § 1961 is allowed. See Marathon Oil Co. v. United States, 374 F.3d at 1133. If neither the Contract Disputes Act or Prompt Payment Act apply, then sovereign immunity on post-judgment interest is not waived and post-judgment interest cannot be recovered. See id. at 1127.

The Contract Disputes Act provides that contractors shall be paid interest on disputes concerning contracts covered by the Contract Disputes Act, with interest accruing for the period starting from the date the claim was submitted and ending upon payment of the claim. See 41 U.S.C. §§ 7102(a), 7109(a)(1). For a party to receive interest on a claim, this court must have jurisdiction over that claim under the Contract Disputes Act. See 41 U.S.C. § 7109(a)(1) ("Interest on an amount found due a contractor on a claim shall be paid to the contractor for the period beginning with the date the contracting officer receives the contractor's claim, pursuant to section 7103(a) of this title, until the date of payment of the claim."); see also Magnus Pac. Corp. v. United States, 133 Fed. Cl. 640, 665 (2017) (finding no interest could be awarded under the Contract Disputes Act, because contractor did not submit its own claim, and 41 U.S.C. § 7109(a)(1) only allows for recovery of interest on a claim submitted by a contractor, not on contractor's successful appeal of a claim submitted by the government).

The Tucker Act grants jurisdiction to this court as follows:

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

28 U.S.C. § 1491(a)(1). The Tucker Act, at 28 U.S.C. § 1491(a)(2), also states:

In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Testan, 424 U.S. 392, 400 (1976); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996).

Section 1491(a)(2) of the Tucker Act provides this court with broad jurisdiction over issues that arise under the Contract Disputes Act, including "any claim by or against, or dispute with a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning termination of a contract . . . ." 28 U.S.C. § 1491(a)(2); see also Todd Constr., L.P. v. United States, 656 F.3d 1306, 1311 (Fed. Cir. 2011). By its terms, the CDA gives this court jurisdiction to hear claims relating to "any express or implied contract . . . made by an executive agency for-- . . . (1) the procurement of property, other than real property in being; [and] (2) the procurement of services[.]" 41 U.S.C. § 7102 (2018) (brackets added); see also 41 U.S.C. § 7104(b); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1344-45 (Fed. Cir. 2008); North Star Steel Co. v. United States, 477 F.3d 1324, 1331 (Fed. Cir. 2007). The Federal Circuit has explained that "Congress's decision to limit the applicability of the [CDA's] procedures to those claims 'relating to' a contract indicates that the claim at issue must have some relationship to the terms or performance of a government contract." Applied Cos. v. United States, 144 F.3d 1470, 1478 (Fed. Cir. 1998).

Before this court can exercise jurisdiction pursuant to the CDA, however, the CDA requires that a contractor's claim first must be submitted in writing to the contracting officer, and the contracting officer must render a final decision on the claim. See 41 U.S.C. § 7103(a)(1) (2018). The CDA does not define "claim," but the United States Court of Appeals for the Federal Circuit has explained that "the definition of the term 'claim' in the FAR governs." Todd Constr., L.P. v. United States, 656 F.3d at 1312; see also Hejran Hejrat Co. v. United States Army Corps of Eng'rs, 930 F.3d 1354, 1357 (Fed. Cir. 2019); Securiforce Int'l Am., LLC v. United States, 879 F.3d 1354, 1359 (Fed. Cir. 2018); H.L. Smith, Inc. v. Dalton, 49 F.3d 1563, 1564 (Fed. Cir. 1995) (explaining that the Federal Circuit "has identified three requirements for a valid CDA claim: (1) the contractor must submit the demand in writing to the contracting officer, (2) the contractor must submit the demand as a matter of right, and (3) the demand must include a sum certain"). Therefore, courts look to the FAR, which defines "claim" as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 ("Definitions") (2019); see also Todd Constr., L.P. v. United States, 656 F.3d at 1312 (explaining that the court should read the definition of "claim" broadly). As this language indicates, a CDA claim can seek monetary or non-monetary relief. See Todd Constr., L.P. v. United States, 656 F.3d at 1311.

The United States Court of Appeals for the Federal Circuit has explained that "the phrase 'as a matter of right' in the FAR's definition of a 'claim' requires only that the contractor specifically assert entitlement to the relief sought. That is, the claim must be a demand for something due or believed to be due . . . ." <u>Alliant Techsystems, Inc. v. United States</u>, 178 F.3d 1260, 1265 (Fed. Cir.), <u>reh'g</u> <u>denied</u>, 186 F.3d 1379 (Fed. Cir. 1999); <u>see</u> <u>also</u> <u>Todd Constr., L.P. v. United States</u>, 656 F.3d at 1311 ("The Tucker Act provides the Claims Court with jurisdiction over 'any claim by or against, or dispute with, a contractor arising under [the CDA], including . . . non-monetary disputes on which a decision of the contracting officer has been issued under section 6 of [the CDA].'") (brackets in original). The content, not the form, determines what is sought in the claim; no magic language is required. <u>See</u> <u>Placeway Constr. Corp. v. United States</u>, 920 F.2d 903, 908 (Fed. Cir. 1990) ("In fact, this court de-emphasized the importance of the form in which claims are submitted, stating, 'We know of no requirement in the Disputes Act that a "claim" must be submitted in a particular form or use any particular wording.'" (quoting <u>Contract Cleaning Maint., Inc. v. United States</u>, 811 F.2d 586, 592 (Fed. Cir. 1987))); <u>CW Gov't Travel, Inc. v. United States</u>, 63 Fed. Cl. 369, 382–83 (2004) ("The CDA does not require 'that a "claim" . . . use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis . . . of the claim.'" (quoting <u>Contract Cleaning Maint., Inc. v. United States</u>, 811 F.2d at 592)). In <u>CW Government Travel, Inc. v. United States</u>, the court indicated, "[t]he Federal Circuit 'has definitively stated that certain "magic words" need not be used [to establish a claim under the CDA;] . . . [rather,] the intent of the "claim" governs.'" <u>Id.</u> at 383 (quoting <u>Transamerica Ins. Corp. v. United States</u>, 973 F.2d 1572, 1578 (Fed. Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Reflectone, Inc. v. Dalton</u>, 60 F.3d 1572) (Fed. Cir.), <u>reh'g</u> <u>denied</u> (Fed. Cir. 1995))) (brackets and omissions in <u>CW Gov't Travel, Inc. v. United States</u>).

In addition to submitting a valid claim to a contracting officer, a "prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a final decision by a contracting officer." <u>Northrop Grumman Comp. Sys. v. United States</u>, 709 F.3d 1107, 1111 (Fed. Cir. 2013); <u>see</u> <u>also;</u> <u>Hejran Hejrat Co. v. United States Army Corps of Eng'rs</u>, 930 F.3d at 1356; <u>Securiforce Int'l Am., LLC v. United States</u>, 879 F.3d at 1359. For this court to exercise jurisdiction over a CDA claim, "the contractor must have received the contracting officer's final decision on that claim." <u>M. Maropakis Carpentry, Inc. v. United States</u>, 609 F.3d 1323, 1328 (Fed. Cir. 2010); <u>see</u> <u>also</u> <u>Hejran Hejrat Co. v. United States Army Corps of Eng'rs</u>, 930 F.3d at 1356; <u>James M. Ellet Constr. Co., Inc. v. United States</u>, 93 F.3d 1537, 1542 (Fed. Cir. 1996). When a contracting officer has not issued a final decision on a contractor's claim, the Court of Federal Claims lacks subject matter jurisdiction to consider the claim. <u>See</u> <u>England v. The Swanson Grp., Inc.</u>, 353 F.3d 1375, 1379 (Fed. Cir. 2004); <u>see</u> <u>also</u> <u>Tidewater Contractors, Inc. v. United States</u>, 107 Fed. Cl. 779, 784 (2012); <u>Deponte Investments, Inc. v. United States</u>, 54 Fed. Cl. 112, 115 (2002). If, however, within sixty days of submitting a claim, the contracting officer has not issued a final decision or notified the contractor of a reasonable time in which a final decision will be issued, the claim may be deemed denied for purposes of appeal or judicial review. <u>See</u> 41 U.S.C. § 7103(f).

Moreover, certification of the claim is required for claims valued at $100,000.00 or more to be considered under the Contract Disputes Act. 41 U.S.C. § 7103(b); see Paul E. Lehman, Inc. v. United States, 673 F.2d 352, 355, 230 Ct. Cl. 11 (1982) ("The import of the language of the [Contract Disputes] Act and its legislative history is that unless a claim has been properly certified, it cannot be considered under the statute. . . . Unless that requirement is met, there is simply no claim that this court may review under the Act."); see also Diversified Maint. Sys., Inc. v. United States, 110 Fed. Cl. 612, 615 (2013); Scan-Tech Sec., L.P. v. United States, 46 Fed. Cl. 326, 339 (2000). "Proper certification requires that 'a contractor must make a statement which simultaneously makes all of the assertions required by 41 U.S.C. § 605(c)(1).'" D.L. Braughler Co., Inc. v. West, 127 F.3d 1476, 1480 (Fed. Cir. 1997) (quoting W.H. Moseley Co. v. United States, 230 Ct. Cl. 405, 677 F.2d 850, 852 (1982) (citing 41 U.S.C. § 605(c)(1)) (current version at 41 U.S.C. § 7103(b)(1) (2018))). Section 7103(b)(1) states:

For claims of more than $100,000 made by a contractor, the contractor shall certify that --

(A) the claim is made in good faith;
(B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
(C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
(D) the certifier is authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 7103(b)(1); see also Primrose Park Assocs., Inc. v. United States, 147 Fed. Cl. 407, 410 (2020) (citing 41 U.S.C. § 7103(b)); MW Builders, Inc. v. United States, 134 Fed. Cl. 469, 487 n.18 (2017). A certification that does not make the assertions required by § 7103(b)(1) is a defective certification, which can be rectified if the case is still pending. See 41 U.S.C. § 7103(b)(3); see also Scan-Tech Sec., L.P. v. United States, 46 Fed. Cl. at 339; Medina Constr., Ltd. v. United States, 43 Fed. Cl. 537, 547 (1999) ("Technical deficiencies in a certification may be corrected at any time before final judgment is entered.").

While defective certifications can be rectified, a complete absence of certification is not a defective certification, and as such cannot be rectified. See 48 C.F.R. § 33.201 (2019) ("Defective certification means a certificate which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person authorized to bind the contractor with respect to the claim. Failure to certify shall not be deemed to be a defective certification."); see also Estes Express Lines v. United States, 123 Fed. Cl. 538, 550 (2015) ("In this regard, the CDA requires that a contractor certify any claim that exceeds $100,000. '[A] lack of any certification before filing cannot be waived and no cure will be allowed.'" (alteration in original) (citation omitted) (quoting Envtl. Safety Consultants, Inc. v. United States, 97 Fed. Cl. 190, 202 (2011))); CSX Transportation, Inc. v. United States, 123 Fed. Cl. 244, 252-53 (2015); Scan-Tech Sec., L.P. v. United States, 46 Fed. Cl. at 339 ("[T]he regulations' definition of defective certification specifies '[f]ailure to certify shall not be deemed to be a defective certification.'" (second alteration in original) (quoting 48

C.F.R. § 33.201)); <u>L–3 Commc'ns Integrated Sys. L.P. v. United States</u>, 132 Fed. Cl. 325, 334 (2017); <u>Medina Constr., Ltd. v. United States</u>, 43 Fed. Cl. at 547 ("A complete failure to provide a certification at all may not be deemed a defective certification.").

Absent certification, the Federal Circuit has ruled that a valid Contract Disputes Act claim has not been submitted, which results in no jurisdiction for the court over a claim brought under the Contract Disputes Act. <u>See</u> <u>D.L. Braughler Co., Inc. v. West</u>, 127 F.3d at 1480 ("If a contractor's submission fails to meet all of the above requirements, it is not a 'claim.'"); <u>Diversified Maint. Sys., Inc. v. United States.</u>, 110 Fed. Cl. at 615; <u>Scan-Tech Sec., L.P. v. United States</u>, 46 Fed. Cl. at 339; <u>Paul E. Lehman, Inc. v. United States</u>, 673 F.2d at 355.

Plaintiff, in the case currently before the court, has not demonstrated that plaintiff's alleged claim met the requirements of the Contract Disputes Act. The July 29, 2015 letter from California's State Controller's Office states:

> For over 30 years, the State of California has adopted the overhead and SAM factor to all of its clients, private or public. ONRR has accepted it thus far, yet now wants the State to adopt ONRR's methodology and interpretation of the State's royalty accounting of fringe benefits. This is counter to the terms of the cooperative agreement. Section 6.5.C (page 15) states, "Fringe benefits shall be allowed in accordance with the State's established accounting system."

> The same language is used for overhead rates. ONRR has no contractual authority to dictate California's polices and accounting practices and control. The Department of Interior cannot require the State to develop a costly separate accounting of its federal royalty program.

(capitalization in original). Plaintiff has failed to establish that July 29, 2015 letter constitutes a valid claim under the Contract Disputes Act. In its amended complaint for fiscal years 2011-2014, plaintiff states:

> 9. On July 29, 2015, Caroline Baez, Bureau Chief of SCO's Financial Audits Bureau responded on behalf of California . . . .

> 10. On October 7, 2015, Interior denied California's protest and issued a "final report" requiring California to return $296,459.94 in twelve equal installments of $24,705.

> 11. On October 29, 2015, California filed an appeal with Interior on the grounds that ONRR could not unilaterally change the terms of the Agreement which specifically states that "Fringe benefits shall be allowed in accordance with the State's established accounting system."

> 12. On January 13, 2016, Interior denied California's appeal . . . .

Plaintiff did not allege that it has met the claim requirements under the Contract Disputes Act in plaintiff's amended complaint, nor does plaintiff now assert that it had filed a claim with a contracting officer. Instead, plaintiff states only that California had "responded" to a draft Attestation Engagement Report issued by ONRR without any

13

indication that such a response was in fact a claim under the Contract Disputes Act. Only in its September 16, 2019 motion in this court does plaintiff first allege that the July 29, 2015 letter, which was a response to the draft Attestation Engagement Report constituted a claim under the Contract Disputes Act. Moreover, plaintiff has not provided this court with any indication in any of its filings that a final decision by a contracting officer has been issued on the matter. Plaintiff states in its original amended complaint that "Interior denied California's protest and issued a 'final report.'" Defendant argues that this was not a final decision by a contracting officer. Plaintiff provides no analysis or context to persuade this court why the United States Department of the Interior's final report may or may not qualify as a final decision issued by a contracting officer under the Contract Disputes Act. In fact, plaintiff does not reference a contracting officer, the Contract Disputes Act or the Contract Disputes Act's claim requirements anywhere in the original amended complaint. Plaintiff merely states the claim "was filed on behalf of a duly elected official of the State of California who clearly met the requirements, including certification, for recovering interest under both PPA and CDA." Plaintiff's motion states:

> There is no question that the plaintiff submitted a "claim" (Sarang at 564-5) on July 29, 2015 when it filed a protest to ONRR's [Department of Interior Office of Natural Resources Revenue, State, and Tribal Support] decision to recoup money based on its misreading of the contract. The protest was turned down by the defendant on October 7, 2015. Plaintiff appealed the decision on October 29, 2015 and was denied in a final agency action on January 13, 2016.

(internal citations omitted). It is, however, unclear what document establishes the "claim." The July 29, 2015 letter, although on the letterhead of plaintiff, Betty T. Yee, California State Controller, was signed by a Carolyn Baez, identified as "Bureau Chief, Financial Audits Bureau, Division of Audits," and concludes: "The SCO [State Comptroller's Office] would like ONRR to reconsider the issues and recommendations identified in Issue 1 of the draft report." (capitalization in original). There is nothing in the July 29, 2015 letter that indicates the July 29, 2015 letter was certified. The response from the government to the July 29, 2015 letter was signed by Heidi Badaracco, whose signature indicates she is the Contracting Officer's Representative. Additionally, the October 29, 2015 letter was not filed or signed by the plaintiff or a member of the State Comptroller's Office, notably, the October 29, 2015 letter was submitted and signed by plaintiff's current counsel of record in the above captioned case, and there is no indication that the October 29, 2015 letter was certified.

In addition, plaintiff does not provide this court with any indication that plaintiff fulfilled the certification requirement imposed on claims valued at over $100,000.00. As indicated above, plaintiff sought $296,459.94 for fiscal years 2011-2014, which exceeds $100,000.00. Plaintiff's motion for interest now contains a footnote which states, without context or explanation, that "a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under 41 U.S.C. chapter 71, Contract Disputes, until certified as required by the statute." Plaintiff makes no attempt to explain how this footnote pertains to plaintiff meeting the certification requirement and plaintiff makes no other mention of certification in its September 16, 2019 motion now under consideration.

Furthermore, defendant argues that the cooperative agreement at issue in the above captioned case is "not covered by the CDA." As explained in Rick's Mushroom Service, Inc. v. United States, 76 Fed. Cl. 250 (2007), aff'd, 521 F.3d 1338 (Fed. Cir. 2008), "[t]he United States Court of Appeals for the Federal Circuit has held that the 'unambiguous language' of the CDA 'is limited to express or implied contracts for the procurement of services and property and for the disposal of personal property. It does not cover all government contracts.'" Id. at 257 (quoting Coastal Corp. v. United States, 713 F.2d 728, 730 (Fed. Cir. 1983)). In Rick's Mushroom Service, the trial court determined that the cooperative agreement with the government for implementing conservation practices in a facility for recycling of mushroom waste was not a procurement contract and therefore, there was no jurisdiction to allow this court to render judgment upon a claim under the CDA. On appeal, the Federal Circuit noted that the CDA applies to "express or implied government contracts for procurement of goods or services." Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343-44 (citing 41 U.S.C. § 602(a) (2006), codified as amended at 41 U.S.C. §§ 7101-09 (2018)). Therefore, for the United States Court of Appeals for the Federal Circuit to find jurisdiction over the Rick's Mushroom appellant's contract claim under 28 U.S.C. § 1491(a)(2), the cost-sharing, cooperative agreement had to qualify as a "procurement" contract. See Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1344. The United States Court of Appeals for the Federal Circuit determined that the appellant's contract did not classify as a procurement contract and, therefore, there was no basis for jurisdiction under 28 U.S.C. § 1491(a)(2). See id.; see also Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (explaining the holding of Rick's Mushroom Service); Cal. Dep't of Water Resources v. United States, 128 Fed. Cl. 603, 611 (2016).

Plaintiff argues that the "[w]hether it's called a cooperative agreement or a contract, the Court of Appeals ruled it was a contract to procure services." Defendant notes in its response to the motion for interest:

> California argues for the first [sic] that this agreement is a CDA procurement contract and goes so far as to suggest that the Federal Circuit found the agreement was a CDA procurement contract. To be sure, California never argued to the Federal Circuit (or this Court) that this agreement was CDA procurement contract and, thus, waived any such argument. The Federal Circuit also did not decide any such issue.

(internal citation omitted). Plaintiff has not demonstrated at any stage of the proceedings in this court or in the Federal Circuit that plaintiff has met the requisite criteria to file a valid claim under the Contract Disputes Act, see 41 U.S.C. § 7103; 41 U.S.C. § 7109,[7] and is not entitled to pre-judgment or post-judgment interest pursuant to the Contract Disputes Act.

---

[7] The court notes that interest under the Contract Disputes Act only begins accruing once a claim is filed, however, but in this case, because no CDA claim has been filed, no interest has accrued under the Contract Disputes Act in plaintiff's case. See 41 U.S.C. § 7109.

Plaintiff also argues, in the alternative, that it is entitled to interest pursuant to the Prompt Payment Act. The Prompt Payment Act allows for the recovery of interest if the government is late in making contractual payments for reasons that are not related to a dispute over the payment itself. See 31 U.S.C. § 3902; FDL Techs. v. United States, 967 F.2d 1578, 1581 (Fed. Cir. 1992); Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. at 98; Marquardt Co. v. United States, 95 Fed. Cl. at 18 ("The PPA requires that the head of an agency pay an 'interest penalty' when the agency acquires 'property or service from a business concern' and the agency fails to pay for each 'complete delivered item of property or service' before the required payment date." (quoting 31 U.S.C. § 3902(a)). As explained by a Judge of the Court of Federal Claims:

> The interest penalty [under the Prompt Payment Act] "shall be paid for the period beginning on the day after the required payment date and ending on the date on which payment is made." 31 U.S.C. § 3902(b). Interest ceases to accrue one year after the required payment date or on the earlier date when a claim is filed under the CDA. 31 U.S.C. § 3907(b)(1). The interest penalty is to be paid regardless of whether the business concern has requested it. 31 U.S.C. § 3902(c).

Marquardt Co. v. United States, 95 Fed. Cl. at 18; see also Bay Cty., Fla. v. United States, 117 Fed. Cl. 131, 136 (2014).

"The purpose of the Prompt Payment Act is to '"provide incentives for the Federal Government to pay its bills on time."'" DMS Imaging, Inc. v. United States, 123 Fed. Cl. at 657-58 (quoting Ocean Tech., Inc. v. United States, 19 Cl. Ct. 288, 290 (1990) (quoting H. Rep. No. 461, 97th Cong., 2d Sess. 1, reprinted in 1982 U.S. Code Cong. & Admin. News 111))). The Prompt Payment Act, however, does not apply if the delay in payment occurred because of a dispute over the payment. See Bay Cty., Fla. v. United States, 114 Fed. Cl. 755, 758 (2014) (finding that "[w]hen there is no disagreement over a payment to be made under a contract, the PPA [Prompt Payment Act] applies"); Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. at 99 ("Here, because there is a clear dispute between the parties as to whether plaintiffs are entitled to payment on plaintiffs' contracts . . . the PPA does not apply, and any claims plaintiffs assert under 31 U.S.C. §§ 3901–3905 are dismissed."); George Sollitt Constr. Co. v. United States, 64 Fed. Cl. 229, 304 (2005) ("Disputed contract payment amounts are subject to Contract Disputes Act interest, 41 U.S.C. § 611, not Prompt Payment Act interest."); Gutz v. United States, 45 Fed. Cl. 291, 298 (1999); CPT Corp. v. United States, 25 Cl. Ct. 451, 456 (1992). Interest under the Prompt Payment Act is calculated at the same rate as interest payments under the Contract Disputes Act. See 31 U.S.C. § 3902(a) ("The interest shall be computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 7109(a)(1) and (b) of title 41, which is in effect at the time the agency accrues the obligation to pay a late payment interest penalty."); see also 41 U.S.C § 7109(b) ("Interest shall accrue and be paid at a rate which the Secretary of the Treasury shall specify as applicable for each successive 6-month period. The rate shall be determined by the Secretary of the Treasury taking into consideration current private commercial rates of interest for new loans maturing in approximately 5 years.").

In this case, defendant's withholding of the $296,549.94 was directly connected to a dispute over the correct method for calculating reimbursement costs related to auditing services obtained by the United States though the cooperative agreement between the parties. In its original amended complaint filed in this court, plaintiff asserts that California took issue with the ONRR's draft Attestation Engagement Report, which addressed the amounts due to plaintiff. Plaintiff stated:

> On July 29, 2015, Caroline Baez, Bureau Chief of SCO's Financial Audits Bureau responded on behalf of California stating:
>
>> We strongly disagree with the issues in the draft report. The findings are not based on the cooperative agreement between ONRR and the SNO. For over 30 years, the State has adopted the overhead and SAM factor for all its clients from public entities. In fact, ONRR has accepted it thus far, yet, as stated above, wants the SCO to adopt a methodology that is counter to the cooperative agreement, and use labor hours that are not actual direct hours worked on the contract. ONRR wants to dictate and pressure the State to adopt its methodology, yet again, Section 6.5.C (page 15) states the ONRR has no contractual authority to dictate California's policies and accounting practices and control. The SCO follows the same practice with all its clients, but it appears that ONRR wants to change and dictate terms of the SCO's cooperative agreement by changing its accounting and billing practices.

(capitalization in original). Plaintiff's entire claim directly concerns plaintiff's disagreement with defendant's interpretation of the agreement between the parties. See Gutz v. United States, 45 Fed. Cl. at 295, 298 (finding that the Prompt Payment Act did not apply and thus could not provide interest because plaintiffs' disagreement with defendant's interpretation of the terms of a settlement agreement was a contractual dispute). The Prompt Payment Act cannot authorize any interest on a claim arising out of a contractual dispute. See 31 U.S.C. § 3907(c); see also Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. at 99 (finding that interest under the Prompt Payment Act was precluded because there was a clear dispute over whether plaintiff was entitled to payment on a contract with the United States Navy); Modeer v. United States, 68 Fed. Cl. 131, 144 (2005) ("[T]he interest penalty provided by the Prompt Payment Act is not available to a contractor, in this case a lessor, when the claimed payment amount is in dispute. . . . Because the holdover rent claim was in dispute, no Prompt Payment Act interest is due on plaintiffs' claim."); Gutz v. United States, 45 Fed. Cl. at 298. The claim in this case only ceased to be in dispute upon the Federal Circuit's issuance of its mandate on August 16, 2019.

The dispute consisted of whether or not the cooperative agreement between the State of California and the United States permitted the use of California's state method for calculating calculate salary, fringe benefits, and indirect costs. California submitted a letter on July 29, 2015 to the United States Department of the Interior, discussed above, asserting that that Department of the Interior had been acting "counter to the terms of the

cooperative agreement" by applying the interpretation that the cooperative agreement precluded California's method. California subsequently filed a lawsuit in the United States District Court for the District of Columbia seeking to resolve the dispute. The lawsuit was transferred to the United States Court of Federal Claims, which found for the United States Department of the Interior on December 20, 2017. The Federal Circuit reversed the trial court on appeal on June 12, 2019, finding California's method of calculating what it was owed to be permissible under the cooperative agreement. The Federal Circuit issued its mandate on August 16, 2019, thereby bringing to an end the disagreement between the parties regarding the method for calculating calculate salary, fringe benefits, and indirect costs for fiscal years 2011-2014.[8] Thus, the Prompt Payment Act cannot

---

[8] The court notes, however, disputes between the parties still exist. In its September 16, 2019 motion to amend the pleadings, plaintiff argued:

> There is no dispute that the defendant took $339,861.88 from the plaintiff as part of its attempt to recover money it claimed was owed due to it's erroneous interpretation of it's agreement to procure the services of the plaintiff's auditors to audit federal oil royalties in California. As soon as plaintiff learned that the defendant had taken $43,401.94 more than it claimed was owed, it notified counsel for defendant on June 20, 2019.Since that time defendant has not disputed, formally or informally, the accuracy of California's calculations of the amount taken.

(internal reference omitted). This court determined

> it would be inappropriate to grant plaintiff's motion to amend its pleading for the above-captioned, previously resolved case in which fiscal year 2015 was not included in plaintiff's original, or transfer, complaint, reviewed by this court, or included in the Federal Circuit's decision and mandate. The State of California has the ability to pursue its claim for fiscal year 2015 reimbursements, but should do so first with the DOI [United States Department of the Interior] in accordance with the Cooperative Agreement. If plaintiff is not satisfied with the DOI's resolution of its fiscal year 2015 claim, plaintiff may file a new complaint with this court regarding a claim for fiscal year 2015, assuming that any applicable statute of limitations has not passed.

Therefore, plaintiff could still challenge the Department of the Interior's handling of the cooperative agreement at the agency level, and then, if unsatisfied, in the courts. Moreover, judgment in the case has not been entered, so plaintiff could theoretically appeal this court's determination regarding amending the complaint to the United States Court of Appeals for the Federal Circuit again. The plaintiff could also appeal this decision regarding interest.

apply in this case, and the government has not waived sovereign immunity for pre- or post-judgment interest on the claim in this case.[9]

## CONCLUSION

Neither the Prompt Payment Act nor the Contract Disputes Act applies in the above captioned case and plaintiff is not entitled to pre-judgment interest or post-judgment interest. Plaintiff's motion for interest payments is **DENIED**.

The Clerk's Office is instructed to enter **JUDGMENT** in favor of the plaintiff in the amount of $296,459.94, plus costs in the amount of $400.00.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

[9] In addition, as defendant also notes in its response to plaintiff's motion, the "even if California were entitled to PPA interest (which it is not), the PPA only provides for one year of interest, but California apparently seeks several years of interest under the PPA." See 31 U.S.C. § 3907(b)(1); Marquardt Co. v. United States, 95 Fed. Cl. at 18.